**Janet K. JONES, Plaintiff and Appellant,**

**v.**

**Mark T. JOHNSON, Defendant and Respondent.**

**No. 880251–CA.**

Court of Appeals of Utah.

Sept. 2, 1988.

**38**

Edward K. Brass, Salt Lake City, on briefs, for plaintiff and appellant.

Richard W. Perkins, Perkins, Schwobe & McLachlan, Salt Lake City, on briefs, for defendant and respondent.

## OPINION

Before GREENWOOD, DAVIDSON, and BILLINGS, JJ.

GREENWOOD, Judge:

Janet K. Jones appeals from the trial court's judgment in favor of defendant, Mark T. Johnson, and its finding that the contract between the parties was not unconscionable. We affirm.

Jones owned a home in West Valley City, Utah, subject to a trust deed and note in favor of Western Mortgage Loan Corporation. Jones had failed to make the required monthly payments on the note since May 1, 1981, and on October 27, 1981, Western Mortgage recorded a notice of default on Jones's property in the Salt Lake County Recorder's Office. Johnson learned of the notice of default and sent Jones an unsolicited letter describing several methods of avoiding foreclosure and urging her to call him at the number provided. Jones did not respond to the letter. Johnson then went to Jones's home with various documents and discussed a proposed transaction with her. Some of the documents were left in her possession for about two weeks. On or about January 22, 1982, the parties executed an Equity Purchase Form, which provided that Johnson would purchase the home from Jones and assume the $14,100 balance due on the Western Mortgage loan, payable at $179 per month, and that Jones would execute a warranty deed in favor of Johnson on the property. The contract further provided that Jones would rent the property from Johnson for $179 per month and could repurchase the property for $21,700 prior to February 28, 1983. Johnson agreed to pay the delinquencies owed under the Western Mortgage note, as well as accrued attorney fees and costs. Jones also signed an Equity Assurance and Investment Full Disclosure form on January 22, 1982. Further documents including a warranty deed, lease, and option, were executed on February 2, 1982, at Stewart Title Company, which closed the transaction. Johnson paid $3,016.58 through Stewart Title to Western Mortgage which cancelled the notice of default. Johnson thereafter made all required payments under the note to Western Mortgage.

Jones defaulted in rent payments to Johnson and a second lease agreement was executed, requiring monthly payments of $280. Jones again defaulted and Johnson initiated eviction proceedings, finally resulting in a writ of restitution and vacation of the property by Jones in approximately March 1983.

On May 6, 1983, Jones filed suit against Johnson, claiming that the parties' contract was unconscionable. Other claims of fraud, misrepresentation and Jones's incompetency were dismissed by stipulation. At a pre-trial conference on January 6, 1986, the parties stipulated that the only issue unresolved was the unconscionability of the contract and agreed to submit the issue to the court on the basis of the record, pleadings and memoranda. The parties also stipulated that the property had a fair market value of $40,000 as of January 12, 1982. The trial court subsequently issued a memorandum decision finding that the transaction between the parties was not unconscionable under the circumstances. This appeal followed.

Jones claims that the trial court erred in finding the contract was not unconscionable. She seeks reversal of the judgment and an order that upon repayment to Johnson of all sums expended by him on the property, that the property be restored to her. Although there are substantial fact

and credibility questions present in this case, it was submitted to the trial court solely on the basis of written documents with no opportunity for the court to assess the parties' credibility. Therefore, we are in as good a position as the trial court to examine the evidence and may review the facts *de novo*. *Bench v. Bechtel Civil & Minerals, Inc.*, 758 P.2d 460, 461 (Utah Ct.App.1988).

The Utah Supreme Court has held in a case involving an unconscionability claim, that "a duly executed written contract should be overturned only by clear and convincing evidence." *Resource Management Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1028, 1043 (Utah 1985). Furthermore, in reviewing the results of a bench trial, the appellant has the burden of citing all evidence in the record which supports the result in the trial court and demonstrating that even viewing the evidence in a light most favorable to the prevailing party, the evidence is insufficient to support the findings. *Harker v. Condominiums Forest Glen, Inc.*, 740 P.2d 1361, 1362 (Utah Ct.App.1987). Therefore, we consider all evidence in the record which supports the judgment in favor of Johnson and determine whether, despite that judgment, the evidence of unconscionability is clear and convincing. In this case, those facts are gleaned from the memoranda of both parties, an affidavit of Johnson, which avers that the facts recited in his memorandum are true, and Jones's deposition. The briefs make reference to Johnson's deposition but it was not designated as part of the record on appeal. Therefore, it is not part of our consideration.

In *Resource Management*, the Utah Supreme Court provided an extensive discussion of the doctrine of unconscionability and its development in Utah case law. The Court stated

"Unconscionable" is a term that defies precise definition. Rather, a court must assess the circumstances of each particular case in light of the twofold purpose of the doctrine, *prevention of oppression and of unfair surprise*. Recognition of these purposes has led to an analysis of unconscionability in terms of "substantive" and "procedural" unconscionability. "Substantive unconscionability" examines the relative fairness of the obligations assumed. "Procedural unconscionability" focuses on the manner in which the contract was negotiated and the circumstances of the parties.

*Resource Management*, 706 P.2d at 1041 (emphasis added) (citations omitted). Therefore, we will examine the facts in this case in light of the purposes of the unconscionability doctrine, i.e., "prevention of oppression and of unfair surprise."

Procedural unconscionability refers "to the relative positions of the parties and the circumstances surrounding the execution of the contract." *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 461 (Utah 1983). Procedural unconscionability will be found where there is an absence of meaningful choice and where lack of education or sophistication results in no opportunity to understand the terms of the agreement. *Resource Management*, 706 P.2d at 1042. Further, in determining whether a contract is procedurally unconscionable, we assess the circumstances existing at the time the contract was entered into. *Id.* Most contracts involve some risk-taking and therefore, the risks reasonably contemplated at the time of contracting are relevant to the issue of unconscionability. *Id.* In *Resource Management*, however, the Court noted that

One party to a contract does not have a duty to ensure that the other has a complete and accurate understanding of all terms embodied in a written contract. Each party has the burden to understand the terms of a contract before he affixes his signature to it and may not thereafter assert his ignorance as a defense.

*Id.* at 1047 (citation omitted). In *Resource Management*, the Court found no procedural unconscionability where terms of the contract had not been explained in detail to the defendants, as "it was incumbent upon them to read the contract and to seek the advice of an attorney before signing the contract." *Id.* at 1048.

In this case, Jones had not made her house payments for several months and her lender had initiated foreclosure proceedings as authorized by the trust deed and by Utah law.[1] Jones was a divorced mother of one, was unemployed, and had a high school certificate. However, there is no evidence that Johnson was aware of those facts. Johnson sent Jones a letter listing several alternatives for avoiding foreclosure of her home. He then visited her and discussed those alternatives. Johnson explained the proposed transaction to Jones in detail and then left the documents with her. Jones did not show the documents to anyone, nor did she discuss them with anyone. Johnson returned to her home a second time, and Jones signed the Sales Agreement and the Disclosure Statement. The Disclosure Statement provides, among other things, that Jones understood and acknowledged the following:

1) AGREED TO *SELL* OUR HOME.
2) AGREED THAT AS OF THIS DATE WE NO LONGER OWN SAID PROPERTY.
3) AGREED THAT WE HAVE BEEN GIVEN THE OPTION TO REPURCHASE THIS RESIDENCE.
4) AGREED AND REALIZE THAT WE ARE *NOT* BORROWING CAPITAL FROM MARK JOHNSON AND/OR ASSOCIATES.

. . . .

7) Been made aware and understand traditional foreclosure procedures, conequences [sic] and alternatives.
a) Ninety (90) day reinstatement
b) Twenty-one (21) day advertising period
c) Auction at the sale date

Approximately ten days later, Jones drove by herself to Stewart Title Company and signed the remaining documents.

■ Under these circumstances, the facts do not support a finding of procedural unconscionability. Johnson explained the terms of the transaction to Jones. There is no claim that she was coerced or browbeaten by Johnson to sign the documents. Jones had an opportunity to seek advice about the transaction but did not do so. All the evidence indicates that she freely and voluntarily signed the documents and had a free choice not to do so. Also, there were alternatives available to her. She could have allowed the foreclosure to proceed, perhaps received excess proceeds from the trustee's sale of the property, and moved to another home. Or, she could have attempted to sell the home herself, to realize her equity interest. Therefore, we find, as did the trial court, no procedural unconscionability.

■ We next determine if the contract was substantively unconscionable. This analysis focuses on the terms of the contract. *Bekins,* 664 P.2d at 461. Elements of substantive unconscionability include contract terms so lopsided as to unfairly oppress or surprise an innocent party, an overall imbalance in rights and responsibilities imposed by the contract, excessive price or a significant cost-price disparity, or terms which are inconsistent with accepted mores of commercial practice. *Resource Management,* 706 P.2d at 1041–42. In this case, the contract required Jones to transfer title to her home to Johnson and to pay rent to him in the same amount she had been obligated to pay under the trust deed note. She then had an option to repurchase the home within the next thirteen months for $21,000. Johnson was required to pay the delinquencies owed on the trust deed note of $3,016.58, and to assume the balance owed on the note of $14,100. If Jones exercised the option to repurchase, Johnson would profit by approximately $5,000. If she did not, he would have clear title to the home, subject only to the mortgage balance with Western Mortgage. The parties stipulated that the home had a fair market value of $40,000 at the time of the contract. Since Johnson had paid $3,016.58 at closing and assumed a $14,100 mortgage, he would then, arguably, be able to profit by approximately $23,000. However, "virtually all contracts involve the assessment of risks." *Id.* The risk in this transaction is the fluctuation in real estate values. The parties' stipulation to a market value of $40,000 on January 1982 pro-

---

**1.** Utah Code Ann. § 57-1-23 (1986) provides that a trust deed may be foreclosed nonjudicially in accordance with the provisions therein, or by judicial foreclosure, the same as a mortgage.

vides no certainty as to the market value at a later date, when Johnson might be in a position to sell the property. His future profit is purely speculative. Similarly, the stipulated market value does not guarantee that Jones would have realized her full equity interest upon sale of the property at a trustee's sale.[2] Jones would have been entitled to a surplus only if the highest bid price at the trustee's sale were in excess of all recorded liens on the property and the costs of sale. Jones bargained to avoid the risk of foreclosure sale, keep living in her home, and have an opportunity to repurchase the home. "Assessment of such risks is intrinsic to the process of contracting and affects the terms on which contracts are entered into." *Id.* Although the terms of the contract favor Johnson, they do not necessarily operate to the detriment of Jones. The contract allowed her an additional period of time to live in her home and perhaps obtain the capital to repurchase the home. There was no certainty she would receive any proceeds from the trustee's sale of the home. As stated in the trial court's memorandum decision,

> Plaintiff was certainly in imminent danger of losing the home by foreclosure. This gave her an additional thirteen months to work out of the difficulty. Obviously, this may not have been the most prudent course for her to choose, i.e., she may have been able to sell the home and salvage some equity—but

there is no evidence to support this either way.

■ Furthermore, the provisions of the contract are not so vague or incomprehensible as to be unconscionable, but "are reasonably straightforward, and the terms used are generally comprehensible to a layman." *See id.* at 1049. Jones signed the disclosure statement, acknowledging that she understood the terms of the transaction and did not deny that Johnson explained the terms to her. Therefore, she could not justifiably have been surprised by the ensuing events. "Although courts will not be parties to enforcing flagrantly unjust agreements, it is not for the courts to assume the paternalistic role of declaring that one who has freely bound himself need not perform because the bargain is not favorable." *Bekins,* 664 P.2d at 459.

We find, therefore, that Jones did not establish by clear and convincing evidence that the contract was unconscionable nor that enforcement of its terms would result in oppression or unfair surprise.

AFFIRMED.

DAVIDSON and BILLINGS, JJ., concur.

---

**2.** The detailed procedural requirements for a trustee's sale of real property under Utah Code Ann. §§ 57–1–23 to –34 (1986) are intended to protect the debtor/trustor. *Concepts, Inc. v. First Sec. Realty Servs. Inc.,* 743 P.2d 1158, 1160 (Utah 1987). These requirements provide protections which are in lieu of the six month right of redemption guaranteed in judicial mortgage foreclosures. Utah Code Ann. § 78–37–6 (1987). *See First Sec. Bank of Utah, N.A. v. Felger,* 658 F.Supp. 175, 183 (D.Utah 1987). Utah Code Ann. § 57–1–32 (1986) further protects the trustor in trustee nonjudicial foreclosures by requiring that deficiency actions be initiated within three months of the trustee's sale and limiting the deficiency to not more than the amount by which the debt secured by the property sold (including all allowable costs) exceeds the fair market value of the property at the date of sale. However, neither the judicial mortgage foreclosure nor the nonjudicial foreclosure statutes address the bid amount acceptable at foreclosure sales. *See* Madsen, *Equitable Considera-*

*tions of Mortgage Foreclosure and Redemption in Utah: A Need for Remedial Legislation,* 1976 Utah L.Rev. 327. Judicial sale of property for less than its fair market value, alone, does not justify setting aside a judicial foreclosure sale, and is balanced by the right to redeem the property within six months. *Clawson v. Moesser,* 535 P.2d 77, 78–9 (Utah 1975). In both types of foreclosures "substantial inadequacy of price, coupled with fraud, mistake, or other unfair dealing" can be the basis for setting aside a foreclosure sale. *First Nat'l Bank v. Haymond,* 89 Utah 151, 57 P.2d 1401, 1405 (1936) (addressing judicial foreclosure); *Bullington v. Mize,* 25 Utah 2d 173, 478 P.2d 500, 504–05 (1970) (applied *Haymond* language in nonjudicial foreclosure). It would be unwarranted conjecture upon conjecture to attempt to predict what sales price would have been obtained in a potential trustee's sale of Jones's home, and whether, if contested, that price would be sustained by a trial court.