**Allen R. GRAHN and Josephine M. Grahn, husband and wife, Plaintiffs and Appellees,**

**v.**

**Herold L. GREGORY, Trustee, for and on behalf of the Marital and Family Trusts of the Albert Eccles Family Trust; and Dean Bradshaw and Christi Bradshaw, husband and wife, individuals; and Scott McNeil, an individual, Defendants and Appellants.**

**No. 890340–CA.**

Court of Appeals of Utah.

Oct. 24, 1990.

Rehearing Denied Nov. 14, 1990.

---

Jeffrey K. Woodbury, Walker Kennedy III (argued), Salt Lake City, for defendant-appellant Gregory.

Russell S. Walker (argued), Salt Lake City, for defendant-appellant Bradshaw.

Robert M. Taylor, John S. Adams (argued), Salt Lake City, for plaintiff-appellee Grahn.

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Appellant Herold L. Gregory ("Gregory"), Trustee for and on behalf of the Marital and Family Trusts of the Albert Eccles Family Trust ("Trusts"), appeals from a district court order entered after a four-day trial reforming a land sale contract with appellees, Allen R. and Josephine M. Grahn ("Grahns"), and rescinding the sale of a contiguous parcel of land to appellants Dean and Christi Bradshaw ("Bradshaws"). The Bradshaws also appeal the reformation of the Grahn/Gregory contract. The Grahns cross-appeal, claiming the trial court erred in (1) ordering them to pay for the additional acreage included after reformation, and (2) refusing to award attorney fees to them. We affirm in part and reverse in part.

We recite the facts in a light favorable to the decision of the fact finder. *See Security State Bank v. Broadhead,* 734 P.2d 469, 470–71 (Utah 1987); *Barnes v. Wood,* 750 P.2d 1226, 1227 (Utah Ct.App.1988).

This dispute involves a parcel of land, owned by the Trusts, located at 2811 Brookburn Road in Salt Lake County. Before it was subdivided, the property was an estate consisting of a home with private drive access.

In 1984, the Trusts hired a surveyor to subdivide a one-half acre plot to be deeded to Barbara Danielson, a beneficiary of the Trusts. Danielson, with the knowledge of

Gregory, instructed the surveyor to locate the one-half acre parcel in the southeast corner and to stake such a parcel "to the south and east off the road, us[ing] the road as the boundary." The larger remaining parcel was designated "parcel one" at trial, while the one-half acre parcel was designated "parcel two."

When the surveyor prepared the legal description of parcel two, he made a four-degree error in describing a turn. Thus, the legal description of parcel two mistakenly included a part of the private drive which the Trusts and the surveyor intended to be included in parcel one.

Danielson decided not to build on parcel two and deeded the property back to the Trusts. Gregory then listed both parcels with a broker. Gregory directed the broker to advise potential buyers the survey stakes placed along the east side of the private driveway formed the boundary between the two parcels and to assure potential buyers the private drive providing access to the existing home was part of parcel one.

The broker showed the property to the Grahns and advised them that either or both of the two parcels could be purchased. The broker removed snow from the survey stakes on the south and east side of the private drive to identify the boundary line between the two parcels and to confirm the private drive was part of parcel one.

The Grahns sought assurances as to the physical boundaries of the parcels on numerous occasions and explicitly stated they wanted the private drive as part of parcel one. The Grahns were not concerned about the acreage of parcel one, but with the physical boundaries of the property as identified by the survey stakes. The broker testified at trial that because of the unique nature of the estate, it would be unusual for the parties to be concerned with the acreage rather than the physical boundaries of the property.

Both the Grahns and Gregory understood and intended at the time the sale was negotiated that the private drive would be included in the sale of parcel one to the Grahns.

After determining to purchase parcel one, the Grahns sought a legal description for the parcel to include in the Earnest Money Agreement. Josephine Grahn telephoned the Gregorys requesting a legal description and was referred to the tax notices. Josephine Grahn then went to the Salt Lake County Recorder's Office and obtained a legal description. Apparently, the Recorder's Office had used the Danielson deed on parcel two as a basis for the legal description for parcel one. Thus, the Recorder's Office subtracted the .56 acres in parcel two from the 1.67 acreage of the total property and included an 1.11 acre figure in the legal description of parcel one. As a result of the mistake on the original survey, the Recorder's legal description of parcel one was not in conformity with the physical staked boundaries of parcel one. Neither the Grahns nor Gregory were aware of the mistaken legal description at this time.

The Earnest Money Agreement recited the 1.11 acre figure and the mistaken legal description, but also provided for an easement for an aesthetic break between the properties which would extend into parcel two "from any point within fifteen (15) feet of the existing drive which separates the two lots. . . ."

The Grahns and Gregory closed the sale of parcel one on August 1, 1986. The legal description in the deed for the property did not include the 1.11 acre figure.[1] The Grahns also received a right of first refusal to purchase parcel two.

On September 1, 1986, Gregory entered into an Earnest Money Agreement with the Bradshaws for the purchase of parcel two. The agreement provided the sale would close by September 15, 1986. Also on September 1, Gregory informed the Grahns of

---

1. In fact, the Warranty Deed from Gregory to the Grahns included a legal description different from that in the Earnest Money Agreement. The source of this legal description is unknown.

The legal description in the Trust Deed from the Grahns to Gregory was identical to the one in the Warranty Deed. Neither instrument recited the 1.11 acre figure.

his intention to sell the property and extended them the right of first refusal on parcel two in accordance with the option contained in the Grahn/Gregory Earnest Money Agreement on parcel one. Under the Earnest Money Agreement, the Grahns had seven days to exercise the option. In the event the Grahns did not exercise the option, the agreement provided that Gregory could sell parcel two within 90 days under the same terms and conditions offered to the Grahns under the option. If, however, those terms changed, Gregory was required to offer the Grahns another option term.

The Grahns did not exercise their right of first refusal and, when the option expired, told Gregory to proceed with the sale of parcel two to the Bradshaws.

On October 11, 1986, Dean Bradshaw discovered the private drive was apparently located within the legal description of parcel two. The Bradshaws informed Gregory. Gregory contacted the surveyor. The surveyor admitted his mistake and completed another survey which correctly placed the private drive within parcel one and yet still provided one-half acre for parcel two in accordance with his original instructions. However, Gregory rejected this survey because the Bradshaws could not construct the house they had designed on the redrawn parcel. The surveyor was then instructed to draft a new survey without reference to the private drive as the boundary between the parcels.

Prior to closing the sale of parcel two, Gregory gave the Bradshaws the opportunity to avoid their agreement, but they refused. On November 20, 1986, Gregory and the Bradshaws closed the sale of parcel two using the original mistaken legal description. At that time, Gregory and the Bradshaws entered into another agreement which provided: "In the event that buyer cannot obtain the full .56 acre according to the legal description, seller agrees to nullify sale and refund purchase price."

Gregory did not inform the Grahns of the mistaken legal description until after closing the sale of parcel two with the Bradshaws. Gregory then informed the Grahns of the mistake and offered to either rescind their agreement or to relocate the private drive within the boundaries of the new parcel.

The Grahns learned the Bradshaws planned to immediately begin construction on their new home on parcel two. The Grahns, therefore, obtained a temporary restraining order to block construction and commenced this lawsuit seeking reformation of their deed to include the private drive as part of parcel one. The temporary restraining order was converted to a preliminary injunction pending resolution of this dispute.

The trial court, after a five-day bench trial, ordered reformation of the Grahns' deed, finding the deed did not conform to the agreement between Gregory and the Grahns to include the private drive in parcel one. In addition, the trial court ordered the Grahns to pay $12,604.06 as the fair market value of the land in excess of 1.11 acres which would be included in the reformed parcel. The trial court also rescinded the agreement between Gregory and the Bradshaws for the sale of parcel two. The court awarded costs to the Grahns, but did not award them attorney fees.

Gregory appeals, claiming the trial court erred in ordering reformation rather than rescission of the sale of parcel one. The Bradshaws appeal, claiming the court erred in determining they were not bona fide purchasers, thus, cutting off the Grahns' reformation rights and, in addition, that the trial court erred in denying them damages for an unlawful injunction which caused them to lose the benefit of their bargain with a material supplier. The Grahns cross-appeal, claiming the trial court erred in ordering them to pay for the additional acreage and in its denial of their request for attorney fees.

## MUTUAL MISTAKE—REFORMATION OR RESCISSION?

■ Gregory initially argues the trial court erred in reforming the sale of parcel one to include the private drive. Although he concedes the parties both mistakenly

believed the private drive was included in parcel one, he contends that under the circumstances the proper remedy was rescission of the sale, not reformation of the contract. Gregory argues the parties never agreed to the contract as reformed because both parties understood that only 1.11 acres were included in parcel one and this was an essential term of the contract as it left parcel two with the .56 acre necessary for his sale of parcel two to the Bradshaws.

Under certain circumstances, courts may reform an agreement to reflect the intent of the parties. Restatement (Second) of Contracts § 155 (1981)[2] states that "[w]here a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected."[3]

The Utah Supreme Court set out the criteria which must be met before reformation is permissible in *Hottinger v. Jensen*, 684 P.2d 1271 (Utah 1984), a case similar to the one before us. The court stated:

Reformation of a deed is a proceeding in equity and is appropriate where the terms of the written instrument are mistaken in that they do not show the true intent of the agreement between the parties. There are two grounds for reformation of such an agreement: mutual mistake of the parties and ignorance or mistake by one party, coupled with fraud by the other party.

This case is a clear case of mutual mistake by the parties. The defendant and all subsequent purchasers except plaintiff agreed that the understanding and the intent of the parties to the various deeds was that the fence line be the boundary. It was only due to a mistake made by the drafter of the deed as to the metes and bounds described that the deed did not conform to the intent of the parties. Reformation is clearly appropriate where there is a variance between the written deed and the true agreement of the parties caused by a draftsman.

*Id.* at 1273 (footnotes omitted). *See also Guardian State Bank v. Stangl*, 778 P.2d 1, 4–7 (Utah 1989); *Briggs v. Liddell*, 699 P.2d 770, 772 (Utah 1985).[4]

■ Reformation is appropriate where the written instrument is not in conformity with the parties' agreement, not where the parties have failed to agree. We will not make a contract for the parties which they did not make, only reform a contract to

---

**2.** Gregory asserts the applicable Restatement section is section 152, which states that

> [w]here a mistake of both parties at the time the contract was made as to a basic assumption on which the contract was made and has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of mistake....

Restatement (Second) of Contracts § 152 (1981).

The Restatement notes, however, that

> [t]he mere fact that both parties are mistaken with respect to such an assumption does not, of itself, afford a reason for avoidance of the contract by the adversely affected party. Relief is only appropriate in situations where a mistake of both parties has such a material effect on the agreed exchange of performances as to upset the very basis for the contract.

Restatement (Second) of Contracts § 152, comment a, at 386 (1981).

**3.** A commentator describes the type of mistake a court may correct through reformation:

> If, on account of a mistake common to both parties to a bilateral transaction the written instrument does not express the true agreement of the parties, equity will generally correct the instrument so as to conform to the actual bargain. Perhaps the most common instance is that of a conveyance which, because of a mistake of the scrivener not discovered by either party, describes too much or too little property....

G. Clark, *Equity* § 248, at 370–71 (1954).

**4.** *See, e.g., Jensen v. Manila Corp. of the Church of Jesus Christ of Latter–Day Saints*, 565 P.2d 63, 64–65 (Utah 1977) (the written instrument failed to conform with the intent of the parties and the court reformed the deed to increase the size of the parcel conveyed to include the boundaries on which the parties had agreed).

reflect the agreement they actually made.[5]

The trial court specifically found Gregory had told the Grahns that the private drive was included in parcel one. In addition, the court found that both parties understood the private drive was included in parcel one and the legal description did not conform to the parties' agreement. There is also evidence that the parties were not concerned with the size of parcel one, but only with the physical staked boundaries of the property.[6] We note that we review the trial judge's findings of fact under the standard set forth in Rule 52 of the Utah Rules of Civil Procedure: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a). This "clearly erroneous" standard applies whether the case is one in equity, as is this case, or one at law. *See Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989); *Barker v. Francis*, 741 P.2d 548, 551 (Utah Ct.App. 1987). The trial court's findings are amply supported by the evidence.

Only Gregory's self-serving statements support his argument that the acreage in-cluded in parcel one was essential to the parties' agreement. The Utah Supreme Court has previously held that when a party requesting rescission offers only self-serving statements concerning the materiality of the mistake, that testimony is insufficient to support an order for rescission. *See Kiahtipes v. Mills*, 649 P.2d 9, 13–14 (Utah 1982).

We agree with the trial court that the parties intended the private drive to be included in parcel one and the legal description did not conform to those intentions and thus conclude the trial court correctly reformed the deed of parcel one to reflect the parties' actual agreement.

## UNILATERAL MISTAKE

■ As a secondary claim, Gregory asserts that his unilateral mistake that there would be sufficient acreage for the Bradshaws to build on parcel two is grounds to rescind the sale of parcel one to the Grahns.

■ The standard for determining whether rescission is the proper remedy for a unilateral mistake is as follows:

---

5. We distinguish on their facts several cases Gregory cites in support of his argument that rescission is the appropriate remedy. *Robert Langston, Ltd. v. McQuarrie*, 741 P.2d 554, 557 (Utah Ct.App.1987) (The parties agreed to the sale of a ranching operation which included grazing permits, cattle and personal property. However, the parties were mistaken about the grazing permits, which had been cancelled; about the number of cattle; and also about the price and terms.); *Eiland v. Powell*, 136 W.Va. 25, 65 S.E.2d 737, 742 (1951) (the legal description in the deed was identical to the legal description in the contract, thus there was no mistake by a drafter, just in the representations made by the seller); *Chesapeake Homes, Inc. v. McGrath*, 249 Md. 480, 240 A.2d 245, 249 (Ct. App.1968) (There was no mistake in the legal description of the property, the seller had misrepresented the boundaries. The court correctly concluded the parties did not come to an agreement in the first instance.). Our facts are much closer to the case of *Bartlett v. Department of Transp.*, 40 Md.App. 47, 388 A.2d 930 (1978). In *Bartlett,* the court dealt with the issue of reformation of a deed when the parties believed the parcel to be 2½ acres smaller than it actually was. The *Bartlett* court reasoned that if a discrepancy in the size of the parcel would

not have prevented the party from entering the contract, the mistake is immaterial and reformation is appropriate. *Id.* at 933.

6. Despite the trial court's findings, Gregory's primary argument in favor of rescission is that he would never have entered the agreement to sell parcel one if he had known there would not be a one-half acre parcel left in parcel two after the subdivision.

Gregory's position fails for several reasons. First, prior to the sale of parcel two to the Bradshaws, the surveyor drafted a revised survey using the private drive as a boundary which left parcel two with one-half acre, but Gregory rejected that survey because the Bradshaws' house would not fit on it. If, in fact, Gregory's concern was only with parcel two containing one-half acre, the revised survey would have satisfied those concerns. Further, when Gregory originally entered into the sale of parcel one to the Grahns, the Grahns had an option to purchase parcel two, thus the subsequent fact that the Bradshaws' house plans would not fit on the property as agreed to or the fact that a variance would have to be obtained would not have been relevant at the time of the original sale of parcel one.

1. The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable.

2. The matter as to which the mistake was made must relate to a material feature of the contract.

3. Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake.

4. It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of his bargain. In other words, it must be possible to put him in status quo.

*B & A Assocs. v. L.A. Young Sons Constr. Co.*, 796 P.2d 692 (Utah 1990) (quoting *John Call Eng'g v. Manti City Corp.*, 743 P.2d 1205, 1209–10 (Utah 1987)); *see also Ashworth v. Charlesworth*, 119 Utah 650, 231 P.2d 724, 727 (1951).

 The appellant must marshal all the evidence which supports the trial court's findings and show that, in the light most favorable to the finding, it is against the "clear weight of the evidence," and is thus clearly erroneous when applied to the foregoing legal principles. *See Smith v. Linmar Energy Corp.*, 790 P.2d 1222, 1224 (Utah Ct.App.1990); *see also Grayson Roper Ltd. Partnership v. Finlinson*, 782 P.2d 467, 470 (Utah 1989); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

 Gregory has failed to marshal the evidence in support of the trial court's findings and then to demonstrate that the trial court's findings were clearly erroneous.[7] Thus, we will not disturb the trial court's reformation of the deed.[8]

### BONA FIDE PURCHASERS

 The Bradshaws contend they are bona fide purchasers of parcel two and thus cut off the Grahns' right to reform the deed on parcel one.[9] The Bradshaws admit they knew of the mistaken description before the sale of parcel two was completed, but argue they submitted their Earnest Money Agreement on parcel two without notice of the mistaken legal description and consequent problems and since the Earnest Money Agreement is a binding contract, *see Lach v. Deseret Bank*, 746 P.2d 802, 805 (Utah Ct.App. 1987), they are bona fide purchasers. The Grahns, on the other hand, argue the relevant time for determining bona fide purchaser status is at the time of "purchase," i.e., at the closing of the sale.

 In Utah, it is clear that a bona fide purchaser can cut off the right of reformation. *See Hottinger v. Jensen*, 684 P.2d 1271, 1273 (Utah 1984) ("the right of reformation of a deed can be cut off by purchase of the property by a bona fide purchaser for value without notice of the mistake").

7. Even if Gregory had marshaled the evidence, however, we find from our independent review of the evidence that all elements for rescission based upon unilateral mistake were not met.
 Gregory's unilateral mistake did not relate to a material feature of the contract because, as previously discussed, the size of parcel two was not a material element in negotiating the sale of parcel one.
 Finally, Gregory's bald assertion that the Grahns can receive damages to put them back to the status quo is without support in the evidence. The evidence at trial established that the Grahns sold their prior home, invested at least $10,000 in improvements to parcel one and put over 1600 hours of time making the property livable and unique to their tastes.

8. Gregory also argues that under Utah law, a contract is merged into the deed and that when the deed refers to a metes and bounds description which differs from oral references to the private drive as the boundary, the description in the deed prevails. Mutual mistake is an exception to the general rule that parol evidence may not contradict, vary, or add to a deed. *Neeley v. Kelsch*, 600 P.2d 979, 981 (Utah 1979). The doctrine of merger is inapplicable where, as here, one of the parties demonstrates a mutual mistake in the drafting of the contractual documents has occurred.

9. The Grahns argue the Bradshaws are not proper appellants as they have not appealed the rescission of their agreement with Gregory for the sale of parcel two. We disagree. The argument in the Bradshaws' appeal, by inference, appeals the rescission of the Gregory/Bradshaw agreement. By asserting they are bona fide purchasers, thereby cutting off the Grahns' reformation rights, the Bradshaws are appealing the rescission of their contract which resulted from that reformation.

The case law implies the essential time to measure knowledge is at the time of the actual sale. A bona fide purchaser is "one who *takes* without actual or constructive knowledge of facts sufficient to put him on notice of the complainant's equity." *Blodgett v. Marsh*, 590 P.2d 298, 303 (Utah 1978) (emphasis added). Further, the Utah Supreme Court, in defining notice, has stated that

> [a]ctual or constructive notice defeats a *subsequent purchaser's* interest. A subsequent purchaser must therefore, show that he had no actual notice, i.e., no personal knowledge, of a prior conveyance or that the prior conveyance did not impart constructive notice, i.e., was not recorded before *his conveyance in the same land was recorded.*

*Utah Farm Prod. Credit Ass'n v. Wasatch Bank*, 734 P.2d 904, 906 n. 2 (Utah 1986) (per curiam) (emphasis added). *See also Diversified Equities, Inc. v. American Sav. & Loan Ass'n*, 739 P.2d 1133, 1136 (Utah 1987) (if a subsequent purchaser has information or facts which would put a prudent person upon inquiry which, if pursued, would lead to actual knowledge, an unrecorded conveyance is not void as against that subsequent purchaser).

■ The Bradshaws discovered the mistake in the legal description more than one month before they closed on the sale of parcel two with Gregory. Gregory and the Bradshaws further agreed in writing that the sale would be nullified if the conveyance could not be as planned. We agree with the trial court that the Bradshaws were not bona fide purchasers of parcel two.[10]

---

**10.** The Bradshaws argue they had an enforceable contract with Rocky Mountain Refractories and as a result of the wrongful injunction against building on parcel two, they are entitled to damages for the loss of that bargain.

In Finding 21, the trial court found that "[d]efendant Bradshaw did not have an enforceable agreement with Rocky Mountain Refractories." The Bradshaws merely baldly reassert that an enforceable agreement existed and do not sustain their burden on appeal to marshal the evidence in support of finding 21 and demonstrate the finding was clearly erroneous.

## PAYMENT FOR ADDITIONAL ACREAGE

■ The Grahns appeal the trial court's order requiring them to pay for the additional acreage in the reformed deed, claiming the acreage included in parcel one was not a basis for the bargain between the Grahns and Gregory. They claim the agreement was that parcel one as circumscribed by the staked boundaries was to be sold for the agreed price. We agree.

The Earnest Money Agreement drafted by the Grahns recited the 1.11 acre figure, but also stated that the private drive divided the two parcels. The deed to parcel one did not recite the size of the property. We do not find that this mistaken designation of the size of parcel one was central to the parties' bargain.

The trial court stated in Finding 13: "The description to Parcel One was obtained by plaintiffs Grahn from the Salt Lake County Recorder['.]s Office. The description designated Parcel One as being 1.11 acres and accepted by the trustee and defendants Grahn as acreage to be sold and purchased."

This finding conflicts with the trial court's Finding of Fact 14 which states Gregory and the Grahns understood the private drive to be the boundary and that the technical description did not conform to the intents of the parties. We therefore conclude that Finding of Fact 13 is clearly erroneous in light of the evidence and its inconsistency with the court's other findings and conclusions. The trial court's order requiring the Grahns to pay for the additional acreage included is therefore reversed.

Even so, there is ample evidence in the record to support the trial court's finding. The representative of Rocky Mountain testified that (1) there was no written contract, (2) other parties would have to perform before that contract could have been entered and those third parties had not performed, and (3) no firm price or estimate of materials had been reached. Thus, we conclude that the trial court did not err in finding that there was no enforceable agreement between Rocky Mountain Refractories and the Bradshaws.

## ATTORNEY FEES

■ The Grahns also appeal the trial court's denial of their request for attorney fees, claiming they should be awarded attorney fees because the evidence demonstrated that Gregory breached the option agreement, and but for that breach, this lawsuit would not have resulted.

■ In Utah, parties may recover attorney fees only if provided for by contract or authorized by statute. *See Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988); *see also Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 965 (Utah Ct.App. 1989). Further, "[i]f provided for by contract, the award of attorney fees is allowed only in accordance with the terms of the contract." *Bracken,* 764 P.2d at 988.

The contractual language in the Earnest Money Agreement which provides for attorney fees states:

> Both parties agree that, should either party default in any of the covenants or agreements herein contained, the defaulting party shall pay all costs and expenses, including a reasonable attorneys' fee, which may arise or accrue from enforcing or terminating this agreement, or in pursuing any remedy provided hereunder or by applicable law, whether such remedy is pursued by filing suit or otherwise.

The Earnest Money Agreement between the Grahns and Gregory included a first right of refusal option on parcel two. The contractual language of that option provided:

> Should Buyer fail to exercise Buyers' option under this provision, then Seller shall have the right to sell the property within ninety (90) days of the date of the expiration of Sellers' said option on terms and conditions no more favorable than those originally offered under this paragraph to Buyer. Should the offer be amended making the terms more favorable, or should the said offer fail and a new offer be received, then the said amendment or offer shall be, once again, subject to the terms of this provision. The terms of this provision shall survive the closing of the purchase of the property which is the subject of the main Agreement.

The Grahns contend that after they declined to exercise their option to purchase parcel two, Gregory offered the Bradshaws more favorable terms and therefore Gregory breached the option agreement when he did not offer the option to the Grahns again. The Grahns assert that the more favorable terms are the extension of the closing date past September 15 and the additional agreement providing that if Gregory could not convey the entire .56 acres, the agreement was void.

The trial court did not make a specific finding concerning the cause of action for breach of the option. The court did find, however, that the "[t]rustee thereafter offered plaintiffs a first right of refusal to purchase Parcel Two which was not exercised by plaintiff." While not stating so directly, we conclude the trial court inferentially found no breach of the option agreement. Furthermore, the issue of this lawsuit concerns the amount of property the parties intended to convey by the sale of parcel one and is not the result of any breach of the option to purchase parcel two. Thus, we find that there was no default of the option agreement and the trial court correctly concluded that attorney fees should not be awarded.

## CONCLUSION

We hold the trial court correctly reformed the land sale contract on parcel one because a mistake in the legal description included in the deed did not reflect the parties' agreement. We conclude the trial court was correct in finding the Bradshaws were not bona fide purchasers of parcel two and thus could not cut off the Grahns' right to reformation. Additionally, we affirm the trial court's conclusion that the Grahns were not entitled to attorney fees as this dispute did not result from a breach of the option agreement.

However, we reverse the trial court's order requiring the Grahns to pay for the additional acreage included in the reformed deed as the facts clearly support a finding

that the parties agreed to purchase and sell parcel one based on the physical boundaries of the parcel and decided on a price for that parcel without regard to the acreage of parcel one.

BENCH and GREENWOOD, JJ., concur.