**EQUITABLE LIFE & CASUALTY IN-SURANCE CO., a Utah corporation, Plaintiff and Appellee,**

v.

**David E. ROSS II, Defendant and Appellant.**

**No. 910746–CA.**

Court of Appeals of Utah.

March 10, 1993.

Rehearing Denied April 13, 1993.

Mark A. Larsen, Salt Lake City, for defendant and appellant.

Warren Patten, P. Bruce Badger, and Bruce D. Reemsnyder, Salt Lake City, for plaintiff and appellee.

Before RUSSON, Associate Presiding Judge, and BENCH and GARFF, JJ.

## OPINION

RUSSON, Associate Presiding Judge:

David E. Ross II appeals the trial court's orders awarding summary judgment and attorney fees to Equitable Life & Casualty Insurance Co. (Equitable). We affirm.

## FACTS

On appeal from an order granting summary judgment, we review the facts in the light most favorable to the non-moving party. *Allen v. Prudential Property and Casualty Ins. Co.*, 839 P.2d 798, 799 (Utah 1992).

In 1986, Bennett Leasing Company (Bennett) attempted a hostile takeover of Equitable by attempting to purchase the stock of David E. Ross II, his wife Connie Ross, his sister Betsy Ross Rapps, and his uncle Galen Ross (collectively, the selling group). R. Earl Ross, Equitable's chief executive officer, and E. Roderick Ross, Equitable's president, opposed the attempted purchase by Bennett. The dispute was resolved when the selling group agreed to sell their stock to Equitable in exchange for cash and Equitable preferred stock convertible to cash.

After considerable negotiation over several months, Equitable sent an offer to the selling group by letter dated September 25, 1987. That offer provided for an increase in the purchase price of the stock and added:

This increase in purchase price is being made hand in hand with the acceptance of the agreement as enclosed. Any changes made with the agreement will result in the decrease of the proposed purchase price. In other words, a premium is being paid to eliminate argument over the minute terms of the agreement.

The selling group did not accept the agreement as enclosed, but instead prepared, signed, and sent its own offer to Equitable on October 30, 1987. Equitable signed the agreement on November 4, and sent it back to the selling group, with a letter clarifying a few points, which letter was approved by the selling group. The final contract documents consisted of the agreement, an addendum, an escrow agreement, and the letter of clarification.

However, at closing on December 2, 1987, David E. Ross II asserted that an agreement for him to perform consulting services for Equitable, which had been included in earlier drafts of the agreement, should have been included in the final con-

tract documents, but was not. Equitable responded that no such agreement was to be included, to which Ross replied that without same there would be no contract. An impasse was avoided when the parties agreed to "close around the issue" of the consulting agreement, and both Ross and Equitable added handwritten statements to the agreement. Ross wrote:

[B]y signing this instrument I do not waive any right or claim to pursue the Consulting Agreement pursuant to the agreement between the parties. Not given for any acceptance of any funds. In addition, acceptance of any funds pursuant to the agreement shall not be construed as a waiver of any kind.

Equitable added:

By following this directive, Equitable Life and Casualty Insurance Company does not admit or imply that there exists any "Consulting Agreement" or understanding regarding any consulting agreement. In addition, Equitable Life and Casualty Insurance Company takes the position that receipt of funds and participation herein by David E. Ross is a waiver of rights, if any exist, by David E. Ross. Acceptance of the cash down payment by Daniel Jackson, esquire trustee account, is not a waiver of rights by David E. Ross.

The stock certificates were subsequently delivered to Equitable.

However, when the time came for David E. Ross II to endorse the stock certificates, he refused to do so, claiming a right to rescind the agreement. In response, Equitable filed a complaint for specific performance of the agreement. Ross counterclaimed for rescission of the agreement, alleging mutual and unilateral mistake and seeking damages for breach of contract and fraud. Equitable filed a motion for partial summary judgment enforcing the agreement and thereby dismissing Ross's counterclaim for rescission, which motion was granted.

The matter then proceeded to trial to the bench on David E. Ross II's remaining claim of damages against Equitable for breach of contract. Following Ross's open-

ing statement, Equitable moved for dismissal of the case. The court, treating the motion as a motion for summary judgment, considered the depositions and exhibits marked by the parties for trial, and granted Equitable's motion. Equitable subsequently requested and received attorney fees and costs.

David E. Ross II appeals, raising the following issues: (1) Were there sufficient material facts to establish his right to rescission under a theory of unilateral mistake, and if so, did he relinquish that right?; (2) Were there sufficient material facts to establish a breach of contract action, entitling him to either rescission or damages?; and (3) Were attorney fees properly awarded to Equitable under the contract and, if so, were such fees reasonable?

## STANDARD OF REVIEW

Summary judgment is only proper "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Baldwin v. Burton*, 850 P.2d 1188, 1192 (Utah 1993) (footnote omitted); *see* Utah R.Civ.P. 56(c). "On an appeal from a summary judgment, we construe the evidentiary material submitted on the motion and all reasonable inferences to be drawn therefrom in a light most favorable to the party opposing the motion." *Thurston v. Box Elder County*, 835 P.2d 165, 166 (Utah 1992) (citations omitted). "We review the district court's legal conclusions for correctness." *Id.* (citation omitted).

## UNILATERAL MISTAKE

David E. Ross II argues that the trial court erred in granting Equitable's pre-trial motion for summary judgment because there were sufficient material facts to establish his right to rescission under a theory of unilateral mistake. Equitable responds that the trial court properly granted summary judgment because Ross cannot establish his right to rescission on the basis of unilateral mistake under any set of facts. We agree.

■ In *Klas v. Van Wagoner*, 829 P.2d 135 (Utah App.1992), we outlined the four criteria that must be satisfied before rescission based on unilateral mistake will be granted:

1. The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable.

2. The matter as to which the mistake was made must relate to a material feature of the contract.

3. Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake.

4. It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of his bargain. In other words, it must be possible to put him in status quo.

*Id.* at 138–39 (quoting *Grahn v. Gregory*, 800 P.2d 320, 327 (Utah App.1990), *cert. denied*, 843 P.2d 516 (Utah 1991)).

■ As to the first criterion, there are two kinds of unconscionability: procedural and substantive. *Id.* at 139. Procedural unconscionability centers on the "relative positions of the parties and the circumstances surrounding the execution of the contract," *Jones v. Johnson*, 761 P.2d 37, 39 (Utah App.1988) (quoting *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 461 (Utah 1983)), and occurs "where there is an absence of meaningful choice and where lack of education or sophistication results in no opportunity to understand the terms of the agreement." *Id.* (citing *Resource Management Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1028, 1042 (Utah 1985)). "Substantive unconscionability occurs when contract terms are 'so lopsided as to unfairly oppress or surprise an innocent party,' or where there is 'an overall imbalance in rights and responsibilities imposed by the contract, excessive price or a significant cost-price disparity, or terms which are inconsistent with accepted mores of commercial practice.'" *Klas*, 829 P.2d at 139 (quoting *Jones*, 761 P.2d at 40).

■ Applying the foregoing to the facts of this case, we are not convinced that the

alleged mistake was so grave as to make enforcement of the contract unconscionable. First, as to procedural unconscionability, there is no indication in the facts that the relative positions of the parties resulted in unequal bargaining positions. To the contrary, the facts show that the parties continually negotiated from equal positions. Nor do the facts indicate that there was an absence of meaningful choice on David E. Ross II's behalf, or that he suffered any lack of education or sophistication that resulted in an inability to understand the terms of the agreement. Instead, the facts show that the parties engaged in many highly sophisticated negotiations, in which numerous substantive changes were made to the agreement. Thus, there was no procedural unconscionability.

Nor was there substantive unconscionability. Utah appellate courts have consistently held that:

> sellers and buyers should be able to contract on their own terms without the indulgence of paternalism by the courts in the alleviation of one side or another from the effects of a poor bargain. They should be permitted to enter into contracts that may actually be unreasonable or which may lead to hardship on one side.

*Park Valley Corp. v. Bagley*, 635 P.2d 65, 67 (Utah 1981) (citation omitted); *accord Klas*, 829 P.2d at 139–40. This is especially true when the parties are dealing at arms length. *Park Valley Corp.*, 635 P.2d at 67.

In the case at bar, extensive negotiations took place in which numerous items were added to and deleted from the agreement. Given the parties' equal bargaining positions, it is clear that the contract terms were not so lopsided as to unfairly oppress or surprise Ross, nor was there an overall imbalance in rights and responsibilities imposed by the contract. We therefore conclude that enforcement of the contract in this case is not unconscionable.

Additionally, as to the third criterion, David E. Ross II has not shown that the mistake occurred notwithstanding the exercise of ordinary diligence by him. On October 30, 1987, the selling group, of which Ross was a member, prepared, signed, and sent a contract to Equitable. Equitable then signed the contract and sent it back to the selling group, along with a letter clarifying a few points. It was up to Ross at that point to exercise ordinary diligence in examining the agreement prior to the selling group's acceptance. However, he did not raise the issue of the consulting agreement at that time, but waited until closing on December 2, 1987, at which time he agreed to "close around the issue" of the consulting agreement. Thus, even viewing the evidence in the light most favorable to Ross, if there was any mistake on the part of Ross, it was entirely due to his own negligence in not discovering and correcting what he regarded to be an error in the parties' agreement. Under such circumstances, we cannot say that "the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake." *Klas*, 829 P.2d at 138–39 (quoting *Grahn*, 800 P.2d at 327); *see generally John Call Engineering, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1210 (Utah 1987) (party seeking rescission on the basis of unilateral mistake must establish that error occurred despite that party's exercise of due care); *Davis v. Mulholland*, 25 Utah 2d 56, 475 P.2d 834, 835 (1970) (party is not entitled to rescission if mistake occurred as a result of that party's own negligence).

Accordingly, because David E. Ross II did not fulfill two of the four criteria necessary to justify rescission on the basis of unilateral mistake, the trial court did not err in granting Equitable's pre-trial motion for summary judgment on that claim.

## BREACH OF CONTRACT

David E. Ross II appeals the trial court's order granting Equitable's second motion for summary judgment, alleging that the agreement between the parties was ambiguous and that sufficient material facts existed to establish a breach of contract action, entitling him to either rescission or damages. Equitable responds that the con-

tract was unambiguous and did not provide for a consulting agreement for Ross. Thus, Equitable argues, the trial court properly granted its motion.

■ "Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness." *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988). Furthermore, whether a contract is ambiguous is itself a question of law. *Village Inn Apartments v. State Farm Fire & Casualty Co.*, 790 P.2d 581, 582 (Utah App.1990) (citing *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983); *Property Assistance Corp. v. Roberts*, 768 P.2d 976, 977 (Utah App.1989)). "Contract language may be ambiguous if it is unclear, omits terms, or if the terms used to express the intention of the parties may be understood to have two or more plausible meanings." *Id.* at 583 (citations omitted). However, a contract term is not ambiguous simply because one party ascribes a different meaning to it to suit his or her own interests. *Larson v. Overland Thrift and Loan*, 818 P.2d 1316, 1319 (Utah App.1991) (citation omitted), *cert. denied*, 832 P.2d 476 (Utah 1992). Moreover, if we determine that the contract terms are clear and unambiguous, "we interpret them according to their plain and ordinary meaning and extrinsic or parol evidence is generally not admissible to explain the intent of the parties." *Id.* (citing *Faulkner*, 665 P.2d at 1293; *Valley Bank & Trust Co. v. U.S. Life Title Ins. Co.*, 776 P.2d 933, 936 (Utah App.1989)).

■ As an initial matter, we address David E. Ross II's argument that the selling group accepted Equitable's September 25, 1987 offer, and that since that offer contained a provision that a consulting fee of $200,000 to be paid to David E. Ross II for being Equitable's legal advisor for five years, such provision should be read into the agreement between the parties. Even viewing the evidence in the light most favorable to Ross, such an argument is untenable.

Although Equitable's September 25 offer did provide for a consulting fee to be paid to Ross, that offer also provided that the agreement must either be accepted as a whole or rejected:

> This increase in purchase price is being made hand in hand with the acceptance of the agreement as enclosed. Any changes made with the agreement will result in the decrease of the proposed purchase price. In other words, a premium is being paid to eliminate argument over the minute terms of the agreement.

■ When an offer specifies the manner in which it must be accepted, it can only be accepted in the specified manner. Otherwise mutual assent is lacking, and no contract is formed. *Crane v. Timberbrook Village, Ltd.*, 774 P.2d 3, 4 (Utah App. 1989); *see generally Burton v. Coombs*, 557 P.2d 148, 148–49 (Utah 1976). Thus, the selling group's October 30, 1987 offer, which changed numerous provisions of Equitable's September 25 offer,[1] must be viewed as a rejection of and counter-offer to Equitable's September 25 offer. Accordingly, the selling group's October 30 offer and the addendum, escrow agreement, and Equitable's November 4, 1987 letter of clarification constitute the agreement in question in this case, and we examine those documents for ambiguity.

In doing so, we conclude that the agreement between the parties is clear and unambiguous. Although some of the extrinsic evidence presented to the trial court indicates that earlier drafts of the contract included a provision for a consulting agreement for David E. Ross II, resort to that extrinsic evidence is not required in this case, since such provision is simply not included in the final draft. The final contract, which was drafted by the selling

1. These changes included an increase in the down payment to the selling group, a decrease in the preferred Equitable stock, the addition of a payment of $100,000 to David E. Ross II at closing, an adjustment in the price at which the selling group could redeem their preferred Equitable shares, and an increase in the deferred payment to the selling group, as well as several other changes.

group, makes no reference to a consulting agreement, and this was the offer which was accepted by Equitable on November 4, 1987, and eventually became the agreement between the parties. Given the fact that the selling group, of which David E. Ross II was a member, drafted this offer, which did not include a consulting agreement, it would be grossly inequitable at this point for this court to now go back and insert a consulting agreement into the parties' agreement. Accordingly, we decline to do so.

Furthermore, the only reference to a consulting agreement whatsoever is contained in the addendum to the agreement, and this reference plainly fails to establish the existence of such an agreement. That provision simply provides, in pertinent part:

2. *Offset.* The redemption, or purchase price of the Equitable Preferred Stock owned or attributed to the Selling Group and redeemed or purchased by Equitable shall be offset and decreased by the amount of federal taxes, interest and penalties, incurred and paid by Equitable as a result of an audit or audits in which Equitable's income tax obligation is increased from adjustments made as a result of the deduction as an ordinary and reasonable expense of any of the following being partially or totally disallowed;

 (a) Consulting payments to David;

 (b) Payment of $300,000 to Bennett Leasing Company;

 (c) Settlement of lawsuits with David E. Ross II;

 (d) Payment of $250,000 to First National Bank of New Jersey.

This provision does not establish the existence of a consulting agreement, nor of any of the other provisions listed, but only indicates that if payments are made, the total payment should be offset by the payment of taxes, interest and penalties incurred and paid by Equitable if those fees are paid, deducted for tax purposes, and then disallowed as tax deductions.[2]

Nor does the fact that David E. Ross II added the following handwritten language to the addendum to the contract alter our analysis:

[B]y signing this instrument I do not waive any right or claim to pursue the Consulting Agreement pursuant to the agreement between the parties. Not given for any acceptance of any funds. In addition, acceptance of any funds pursuant to the agreement shall not be construed as a waiver of any kind.

All this provision indicates is that Ross retained his right to pursue the consulting agreement that was included in earlier drafts of the contract between the parties. There is no reservation, explicit or implicit, of a right to rescind the agreement entered into, only to pursue a separate right to a consulting agreement.[3] However, it is far too great a leap to read the language in question as indicating that by reserving a right to pursue a consulting agreement, Ross also reserved a right to totally rescind the agreement between the parties. We therefore decline to do so.

█ Since the agreement between Equitable and the selling group unambiguously did not provide for a consulting agreement, the trial court did not err in granting Equitable's second motion for summary judg-

---

**2.** Moreover, even were we to find the addendum establishes the existence of a consulting agreement, Ross's claim nevertheless fails. The only mention of a consulting agreement in any of the documents which constitute the parties' agreement is this passing reference in the addendum. There is no specification in any of the documents of the scope, the terms, or the value of the consulting agreement. Thus, even if inclusion of such agreement was at one time considered by the parties, clearly there was no "meeting of the minds" as to that issue, as the trial court correctly found to be the case here. Since

there was no "meeting of the minds" as to the consulting agreement, it cannot be considered part of the parties' agreement. *See Cottonwood Mall Co. v. Sine,* 767 P.2d 499, 502 (Utah 1988); *John Call Engineering, Inc. v. Manti City Corp.,* 743 P.2d 1205, 1207 (Utah 1987); *Herm Hughes & Sons, Inc. v. Quintek,* 834 P.2d 582, 584 (Utah App.1992).

**3.** Additionally, we note that our decision in this matter in no way forecloses Ross's right to pursue that claim.

ment on David E. Ross's remaining claim of damages.[4]

## ATTORNEY FEES

David E. Ross II appeals the trial court's award of attorney fees to Equitable, claiming that although Equitable is entitled to an award of attorney fees with regard to its claim for breach of contract, it is not entitled to those fees incurred in defending against Ross's claim for rescission. Equitable responds that since the contract between the parties provided for such fees, and since the two issues are, in essence, the same issue, the trial court properly awarded it attorney fees.

 In Utah, attorney fees are awarded only if authorized by statute or contract. *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988); *accord Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269 (Utah 1992). If provided for by contract, attorney fees are awarded in accordance with the terms of that contract. *Dixie State Bank*, 764 P.2d at 988. Although such an award is a matter of legal right, it must be reasonable and supported by adequate evidence. *Hoth v. White*, 799 P.2d 213, 219 (Utah App.1990). Determination of such fees is within the sound discretion of the trial court, and will not be overturned unless there is a showing of a clear abuse of discretion. *Dixie State Bank*, 764 P.2d at 989. Furthermore, we "will presume that the discretion of the trial court was properly exercised unless the record clearly shows to the contrary." *Goddard v. Hickman*, 685 P.2d 530, 534–35 (Utah 1984) (quoting *State ex rel. Road Comm'n v. General Oil Co.*, 22 Utah 2d 60, 62, 448 P.2d 718, 719 (1968)).

In the case at bar, the parties' contract provides:

> In the event any party hereto alleges a breach or violation of the terms and conditions of this Agreement by another par-

ty, the prevailing party to such resulting action shall have a right to recover from the non-prevailing party any and all costs and expenses, including reasonable attorneys' fees, incurred in the defense or pursuit of said action.

 The plain language of the contract provides that the prevailing party has a right to an award of attorney fees incurred in the pursuit *or* defense of an action arising from a claimed violation of the contract. Since Equitable incurred fees both in pursuing its claim for breach of contract and in defending against David E. Ross II's claim for rescission, it is clearly entitled to an award of attorney fees in regard to both actions. Thus, the trial court did not abuse its discretion in awarding attorney fees in accordance with the terms of the parties' contract.

Ross also argues that the trial court abused its discretion in determining that Equitable's requested attorney fees were reasonable. As to the reasonableness of the attorney fees awarded by the trial court, determination of such fees is within the sound discretion of the trial court, so long as the fees are supported by the evidence in the record. *Baldwin v. Burton*, 850 P.2d 1188 (Utah 1993) (footnotes omitted). Among the factors to be considered by the trial court in considering the reasonableness of the fee are "the extent of services rendered, the difficulty of the issues involved, the reasonableness of time spent on the case, fees charged in the locality for similar services, and the necessity of bringing an action to vindicate rights." *Id.* at 1200 (footnote omitted).

In the case at bar, the trial court's determination is amply supported by the evidence and appears to be reasonable, especially in light of the fact that Equitable filed an attorney fees affidavit with de-

---

**4.** Moreover, even were we to find that the agreement between the parties was ambiguous, we would nonetheless have to rule against Ross, given the well-settled rule that ambiguous contracts must be construed against the drafter. *See, e.g., Sears v. Riemersma*, 655 P.2d 1105, 1107 (Utah 1982) ("The well-established rule in Utah is that any uncertainty with respect to construction of a contract should be resolved against the party who had drawn the agreement."); *Parks Enters., Inc. v. New Century Realty, Inc.*, 652 P.2d 918, 920 (Utah 1982) ("It is also settled law that a contract will be construed against the drafter.").

tailed billing statements attached, which strictly complied with Rule 4–505 of the Utah Code of Judicial Administration. Since the record supports the trial court's award of attorney fees in this case, we cannot say that the trial court committed a clear abuse of discretion in determining that the said fees were reasonable.[5]

## CONCLUSION

For the aforementioned reasons, we conclude that the trial court did not err in granting Equitable's motions for summary judgment, and did not abuse its discretion in awarding Equitable attorney fees under the contract. Accordingly, we affirm.

BENCH and GARFF, JJ., concur.

---

**5.** This is particularly true considering the fact that the basis of Ross's opposition to the reasonableness of the award of attorney fees, that Equitable should have filed another motion for summary judgment as to Ross's remaining claims instead of going to trial, is, as noted by the trial court, a somewhat disingenuous position for a party bringing a claim in good faith to take.