2009 UT 54

**PETERSON & SIMPSON, a Utah Partnership and Lawrence R. Peterson, Appellees and Cross–Appellants,**

v.

**IHC HEALTH SERVICES, INC., Appellant and Cross–Appellee.**

**Nos. 20080507, 20080420.**

Supreme Court of Utah.

Aug. 4, 2009.

Roger P. Christensen, Karra J. Porter, Salt Lake City, for Appellees.

David L. Arrington, Philip M. Ballif, Thomas J. Burns, Michael S. Malmborg, Salt Lake City, for Appellant.

WILKINS, Justice:

## INTRODUCTION

¶ 1 This case centers on the interpretation of the arbitration clause of a contract entered into by IHC Health Services, Inc. (IHC) and Peterson & Simpson (Peterson). Appellant and Cross–Appellee IHC asks us to determine whether the district court erred in ordering the parties to select arbitrators for their underlying dispute by a procedure formulated by the court. Appellee and Cross–Appellant Peterson asks us to determine whether the district court erred in finding that all of its claims are subject to arbitration.

## BACKGROUND

¶ 2 For almost twenty years, IHC employed the law firm of Peterson & Simpson to represent IHC in the collection of delinquent accounts. In 1996, the parties memorialized the terms of their relationship in a written contract. The contract contains an arbitration clause which provides: "In the event of any dispute arising under this agreement that cannot be settled by informal means, the parties agree to submit the dispute to binding arbitration according to the Utah Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association."

¶ 3 A dispute arose between the parties when IHC changed its policy regarding the collection of delinquent accounts. As Peterson was compensated on a contingency fee basis, this change in policy severely impacted Peterson financially. Peterson filed a complaint in the Third District Court in January 2006 alleging (1) breach of the express provisions of the contract, (2) breach of the covenant of good faith and fair dealing, and (3) intentional injury to contract rights. In response, IHC filed a Motion to Compel Arbitration. Peterson subsequently stipulated that its first claim should be arbitrated, but maintained that its second and third claims were not subject to arbitration.

¶ 4 While this motion was pending, Peterson attempted to initiate arbitration on the first claim by sending a letter to IHC's counsel that included a draft of an Arbitration Agreement which set out a procedure for arbitration. IHC failed to respond to this letter either before or after the August 2007 hearing on the motion.

¶ 5 The district court granted IHC's Motion to Compel Arbitration in an order issued in October 2007, finding that the arbitration clause of the contract is "very broad and indicates an agreement by the parties to arbitrate 'any dispute that arises under the agreement,' including any dispute developing from or resulting from the agreement or originating from the Agreement, without any limitation." Thus, the court ruled that all of Peterson's claims were subject to arbitration. The district court further found that "[t]he rules of the Utah Arbitration Act and the Commercial Arbitration Rules of the American Arbitration [Association] apply to resolve any disputes between the parties arising under or relating to the Agreement." Following this order Peterson still received no response to its letter from IHC and arbitration did not proceed.

¶ 6 On October 26, 2007, Peterson filed a Motion for Relief Re: Arbitration, arguing that IHC was not cooperating with Peterson's attempts to move forward with arbitration. A hearing was held on February 21,

2008, and a supplemental hearing on March 24, 2008. The court granted Peterson's motion and, finding that it had authority to make a provisional ruling under Utah Code section 78B–11–109,[1] ordered the parties to select arbitrators by the following procedure:

a. On or before April 25, 2008, the parties should (i) agree on a number of arbitrators; the number may be one, three or some other agreed number; and (ii) agree on the identity of the arbitrators.

b. If the parties are unable to agree on the arbitrators by April 25th, each party shall submit to the Court two names for potential arbitrators. The Court will then pick one name submitted by each party, and will also pick a third arbitrator from the two remaining names. The names will be identified to the parties by minute entry order from the Court.

IHC appeals this ruling. Peterson cross appeals the district court's October 2007 ruling that all of its claims are subject to arbitration.

### ANALYSIS

¶ 7 We first discuss whether the district court had authority under the Utah Arbitration Act to prescribe a method for the selection of arbitrators. We next turn to the issue of which of Peterson's claims fall within the scope of the contract's arbitration clause.

### I. THE PARTIES AGREED ON A METHOD FOR SELECTING ARBITRATORS WHICH MUST BE FOLLOWED

¶ 8 When the parties to a dispute have contracted to settle their dispute in arbitration, the role of the courts is extremely limited. Section 78B–11–112 of the Utah Arbitration Act specifies the narrow circumstances under which a court is authorized to interfere in the appointment of arbitrators. That section provides:

If the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method must be followed, un-

---

1. The district court cited a former version of the statute, Utah Code section 78–31a–109 (2002). As the language of the statute was not changed when the section was renumbered in 2008, we use the current numbering throughout this opinion.

less the method fails. If the parties have not agreed on a method, the agreed method fails, or an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court, on motion of a party to the arbitration proceeding, shall appoint the arbitrator.

Utah Code Ann. § 78B–11–112(1) (2008).

¶ 9 In construing this statute, we look first and foremost to the statute's plain language. *Dale T. Smith & Sons v. Utah Labor Comm'n*, 2009 UT 19, ¶ 7, 208 P.3d 533. We consult other sources only if the plain language of the statute is ambiguous. *Otter Creek Reservoir Co. v. New Escalante Irrigation Co.*, 2009 UT 16, ¶ 14, 203 P.3d 1015.

¶ 10 IHC argues that by referencing the American Arbitration Association (AAA) rules in the arbitration clause of the contract IHC and Peterson agreed on a method for the selection of arbitrators which Peterson was required to follow and which the district court was required to enforce. Peterson disagrees. There is no evidence in the district court's decision that the court made a determination of whether the parties had agreed on a selection method. Rather, the record of the February 21, 2008 hearing indicates that the court deliberately avoided deciding whether the AAA rules applied. Such avoidance is not permissible under the statute.

¶ 11 The plain language of the statute states that if the parties have agreed to a method for selecting arbitrators, that method "must" be followed. Utah Code Ann. § 78B–11–112(1). On the other hand, if no method has been agreed upon, the court may assume the responsibility for selection. Thus, the statute clearly contemplates that a court must first evaluate the contract to determine whether the parties have agreed to a selection method. If the court finds that they have, the court has no alternative but to enforce it. The statute provides for only one exception to this rule; the agreed upon method need not be applied if the method "fails." *Id.*

¶ 12 This determination has not yet taken place in this case. Rather, the district court found justification for its ruling under Utah Code section 78B–11–109, which grants a court the authority, prior to the appointment of an arbitrator, to "enter an order for provisional remedies to protect the effectiveness of the arbitration proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action." *Id.* § 78B–11–109(1). This was error. The authority granted in section 78B–11–109 is not reached until after a determination has been made under section 78B–11–112 that the parties have not agreed to any method for the appointment of arbitrators.

¶ 13 Therefore, while we consider the relevance of the pertinent sections of the Utah Arbitration Act, the underlying issue is one of straightforward contract interpretation. "Arbitration is a contractual remedy for the settlement of disputes ...." *Lindon City v. Engineers Constr. Co.*, 636 P.2d 1070, 1073 (Utah 1981) (internal quotation marks omitted). The parties are free to structure their agreement in any manner they desire. We respect the parties' freedom to contract by enforcing arbitration agreements "according to their terms and [ensuring that] arbitration proceedings [are] conducted in the manner to which the parties have agreed." *Buckner v. Kennard*, 2004 UT 78, ¶ 18, 99 P.3d 842. As with any contract, we determine what the parties have agreed upon by looking first to the plain language within the four corners of the document. *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599. When interpreting the plain language, "we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless." *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 28, 210 P.3d 263. If we find the language unambiguous, we interpret the contract as a matter of law. *Cent. Fla. Invs., Inc.*, 2002 UT 3, ¶ 12, 40 P.3d 599. We find ambiguity only where the language of the contract "is reasonably capable of being understood in more than one sense." *Id.* (internal quotation marks omitted).

¶ 14 Here, the plain language of the contract clearly indicates that the parties agreed on a method of selecting arbitrators. The arbitration clause states, "In the event of any dispute arising under this agreement that cannot be settled by informal means, the

parties agree to submit the dispute to binding arbitration according to the Utah Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association." A plain reading of the clause unequivocally indicates that the parties have agreed that if a dispute should arise between them, they would first attempt to settle that dispute by informal means. Should informal means fail, the parties agreed that they would arbitrate their dispute in accordance with the rules set forth by the Utah Arbitration Act and the AAA.

¶ 15 By specifically naming the Utah Arbitration Act and the Commercial Arbitration Rules of the AAA, the parties have agreed to adopt these rules as part of the contract. It is immaterial that the contract does not use the exact words of adoption suggested by the AAA. Incorporation by reference requires that "the reference ... be clear and unequivocal, and alert the non-drafting party that terms from another document are being incorporated." *Hous. Auth. v. Snyder*, 2002 UT 28, ¶ 19, 44 P.3d 724 (internal quotation marks omitted). Additionally, the party "must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Consol. Realty Group v. Sizzling Platter, Inc.*, 930 P.2d 268, 273 (Utah Ct.App.1996)(internal quotation marks omitted). These requirements are satisfied here. Therefore, arbitration must be conducted according to the Utah Arbitration Act and AAA rules. Any other reading would render the plain language of the contract meaningless.

¶ 16 Additionally, we find no ambiguity in the arbitration clause. Peterson has not advanced any rational alternative interpretation of the contract language and we find none. Ambiguity might have arisen in the event that the provisions of the Utah Arbitration Act conflicted with the provisions of the AAA, but such is not the case here. The Utah Arbitration Act includes no method for the selection of arbitrators beyond its provision that a court may appoint arbitrators if the parties have not agreed on a method of selection or if that method fails. Utah Code Ann. § 78B–11–112(1). The AAA Commercial Arbitration Rules, on the other hand, contain a detailed, step by step procedure for selecting arbitrators. In brief, under AAA rules, the claimant must first file two copies of a demand for arbitration along with two copies of the contract "at any office of the AAA." AAA Commercial Arb. R. 4(a)(ii) (2007). Immediately following this filing,

> [t]he AAA shall send simultaneously to each party to the dispute an identical list of 10 ... names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement .... If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA.

*Id.* R. 11(a)-(b). The AAA then selects arbitrators from these lists. *Id.* Thus, no conflict exists between the Utah Arbitration Act and the AAA rules, and the contract is unambiguous.

¶ 17 Because the plain language of the arbitration clause clearly incorporates the AAA rules, and because the arbitration clause is unambiguous, we find that the parties have agreed on a method of selecting arbitrators as a matter of law. That method is the method outlined in the AAA rules. We further find that the agreed upon method has not failed for the purposes of section 78B–11–112(1) of the Utah Arbitration Act. The method has had no opportunity to fail as it has not as yet been attempted. As a misunderstanding of a contract is a mistake of law, we reverse and vacate the provisional order mandating a procedure for the selection of arbitrators. We remand and instruct the parties to proceed according to AAA rules.

## II. ALL OF PETERSON'S CLAIMS ARE SUBJECT TO ARBITRATION

¶ 18 We now turn to the question of which of Peterson's claims are subject to arbitration. Whether a district court correctly interpreted the scope of an arbitration clause is a question of law which we review for correctness. *See Bybee v. Abdulla*, 2008

UT 35, ¶ 7, 189 P.3d 40; *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475, 479 (Utah 1986). A determination of which claims the parties intended to be subject to arbitration requires that we interpret the arbitration clause of the contract. This we do as a matter of law unless we find ambiguity in the plain language of the agreement. *Cent. Fla. Invs., Inc.*, 2002 UT 3, ¶ 12, 40 P.3d 599.

¶ 19 The language of the arbitration clause is not ambiguous. The parties have agreed to arbitrate "any dispute arising under this agreement that cannot be settled by informal means." We find that all of Peterson's claims fit neatly under the plain meaning of "arising under this agreement." We therefore affirm the ruling of the district court on cross-appeal.

### A. Peterson's Claim of Interference with Contract Rights Arises Under the Agreement

¶ 20 Peterson claims that IHC intentionally injured its contract rights when it backed away from its traditional policy of vigorous collection of delinquent accounts. The nature of this dispute clearly contemplates application of the contract. In order to determine if IHC has intentionally interfered with Peterson's contract rights, the arbitrator will have to evaluate the terms of the contract as well as the rights and duties of the parties under the contract. Thus, this claim arises under the agreement.

### B. Peterson's Claim of Breach of the Covenant of Good Faith and Fair Dealing Arises Under the Agreement

¶ 21 Peterson claims that IHC breached the implied covenant of good faith and fair dealing. Good faith is a judicially recognized, common law duty. As we have previously held, "A claim for breach of the implied covenant of good faith and fair dealing ... is based on judicially recognized duties not found within the four corners of the contract. These duties, unlike the duties expressly stated in the contract, are not subject to alteration by the parties." *Christiansen v. Farmers Ins. Exch.*, 2005 UT 21, ¶ 10, 116 P.3d 259 (internal citation omitted).

Thus, by law, good faith and fair dealing are implied terms of every contract. *Id.* They are recognized as included terms regardless of whether or not they are expressly stated in the contract language. "They exist whenever a contract is entered, and are imposed on the parties 'consistent with the agreed common purpose' of the contract." *Id.* (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991))(internal citation omitted). As the duties of good faith and fair dealing arise out of the relationship between the parties created by the contract and have no independent existence outside of the contract, a claim for the breach of the covenant of good faith arises under the contract.

¶ 22 Our decision today is consistent with our former decision in *Christiansen v. Farmers Insurance Exchange.* In *Christiansen,* plaintiffs asserted "breach of both the express terms of their insurance contract and the implied covenant of good faith and fair dealing." *Id.* ¶ 1. Under the terms of the agreement between the parties, the breach of express contract claims were sent to arbitration. *Id.* Respondents then "filed ... a motion for a protective order to prevent further discovery related to the bad faith claim until after a breach of the express contract was established." *Id.* The district court denied the motion, holding that the good faith claim was severable from the express contract claim and could therefore be pursued in litigation concurrent with the arbitration on the express contract claim. *Id.* We affirmed, holding that the respondent had "failed to demonstrate good cause for a protective order because the claims of breach of express contract and bad faith are premised on distinct duties that give rise to divergent and severable causes of action." *Id.* ¶¶ 10, 14. Whether good faith claims are severable from arbitrable contract claims is a determination entirely dependant on the language of the arbitration clause at issue. In the case we decide today, the parties agreed to arbitrate "any dispute arising under this agreement that cannot be settled by informal means." Such was not the case in *Christiansen.*

¶ 23 Further, at the time the *Christiansen* dispute reached this court, arbitration on the express breach of contract claim had concluded. *Id.* ¶ 6. "[B]ecause the breach of express contract claim [had] been resolved by arbitration, the question of whether any other issues in the Christiansens' court action should have been stayed [was] moot ...." *Id.* As the *Christiansen* arbitration had been fully resolved but had not addressed the bad faith claim, it was appropriate for the bad faith claim to be pursued in litigation.

## III. DIRECTION TO THE DISTRICT COURT

¶ 24 We clarify our ruling for the sake of the lower courts which will have to proceed in conformity with the law as we explain it today. When presented with a question regarding an arbitration agreement, the court must first determine whether the parties have agreed to a method for the selection of arbitrators. If the arbitration clause at issue specifies a method, the court must direct the parties to apply that method. If the party seeking to bring a claim chooses not to follow the agreed upon method, that party has no avenue available in court; the method agreed upon between the parties in the arbitration agreement is the only option for addressing a claim.

¶ 25 The court's next step is a determination of the scope of the arbitration agreement. This requires an interpretation of the agreement for a finding as to which claims are subject to arbitration. Appropriate matters are then referred to arbitration. Should the arbitrator later determine that any of the referred claims do not fit under the arbitration clause, the parties may then pursue that matter through the courts.

## CONCLUSION

¶ 26 We find that IHC and Peterson contractually agreed upon a method for the selection of arbitrators. Under section 78B–11–112(1) of the Utah Arbitration Act, the court must direct that method be applied. We further find that all of Peterson's claims arise out of the contract and are all, therefore, subject to arbitration.

¶ 27 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Judge TAYLOR concur in Justice WILKINS' opinion.

¶ 28 Having disqualified herself, Chief Justice DURHAM does not participate herein; District Judge JAMES R. TAYLOR sat.