2010 UT App 23

**SOUTH RIDGE HOMEOWNERS' ASSOCIATION, a Utah non-profit corporation, Plaintiff and Appellee,**

v.

**Lisa M. BROWN, Defendant and Appellant.**

No. 20080836–CA.

Court of Appeals of Utah.

Feb. 4, 2010.

James E. Magleby and Christine T. Greenwood, Salt Lake City, for Appellant.

Eric P. Lee and Robert D. Andreasen, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 We agree with the parties that the relevant provisions of the Declaration of Covenants, Conditions and Restrictions (the CC & Rs) are not ambiguous.[1] *See generally WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶¶ 20, 22, 54 P.3d 1139 (stating that "[w]hether an ambiguity exists in a contract is a question of law" and that ambiguity exists if a contract term "is capa-

ble of more than one reasonable interpretation") (citations and internal quotation marks omitted). Accordingly, our interpretation of the relevant provisions is limited to the four corners of the CC & Rs, and we of course interpret the relevant language in light of the overall meaning and intent of the CC & Rs. *See Bodell Constr. Co. v. Robbins,* 2009 UT 52, ¶ 19, 215 P.3d 933 ("When we interpret a contract, . . . we determine the intent of the contracting parties by first look[ing] to the writing alone. If the writing is unambiguous, we determine the intent of the parties exclusively from the plain meaning of the contractual language.") (alteration in original) (citation footnotes and internal quotation marks omitted); *Peterson & Simpson v. IHC Health Servs., Inc.,* 2009 UT 54, ¶ 13, 217 P.3d 716 ("As with any contract, we determine what the parties have agreed upon by looking first to the plain language within the four corners of the document. When interpreting the plain language, 'we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless.' If we find the language unambiguous, we interpret the contract as a matter of law.") (citations omitted). *See also Swenson v. Erickson,* 2000 UT 16, ¶ 11, 998 P.2d 807 ("Restrictive covenants that run with the land and encumber subdivision lots form a contract between subdivision property owners as a whole and individual lot owners; therefore, interpretation of the covenants is governed by the same rules of construction as those used to interpret contracts."). "In interpreting contracts, 'the ordinary and usual meaning of the words used is given effect,'" which "ordinary meaning . . . is often best determined through standard, non-legal dictionaries." *Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n,* 899 P.2d 779, 782 (Utah Ct.App.1995) (citation omitted).

¶ 2 The parties dispute whether defendant Lisa M. Brown violated the CC & Rs by renting her property on a short-term basis. The trial court concluded she did. The pivotal provision is article X, section 2, which

---

1. That the parties have different views about the meaning of the key terms does not render the terms ambiguous. *See Equitable Life & Cas. Ins. Co. v. Ross,* 849 P.2d 1187, 1192 (Utah Ct.App.) ("[A] contract term is not ambiguous simply because one party ascribes a different meaning to it to suit his or her own interests."), *cert. denied,* 860 P.2d 943 (Utah 1993).

provides, in relevant part, as follows: "No timeshare, nightly rental or similar use will be allowed on any single family residential lot." Ultimately, we must determine whether Brown's weekly rentals were uses similar to a nightly rental or timeshare. *See Fairbourn Commercial, Inc. v. American Hous. Partners, Inc.*, 2004 UT 54, ¶ 6, 94 P.3d 292 ("[Q]uestions of contract interpretation not requiring resort to extrinsic evidence are matters of law, which we review for correctness.") (citation and internal quotation marks omitted).

¶ 3 "Similar" is defined as "having characteristics in common," being "very much alike" or "comparable," and "being alike in substance or essentials." *Webster's Third New Int'l Dictionary* 2120 (1993). The nonlegal definition of "timeshare" is "joint ownership or rental of a vacation lodging (as a condominium) by several persons with each occupying the premises in turn for short periods."[2] Merriam–Webster OnLine, http://www.merriam-webster.com/dictionary/timeshare (last visited Feb. 3, 2010). The relevant definition of "short" is "not extended in time" or "of brief duration." *Webster's Third New Int'l Dictionary* at 2102. "Nightly" means "happening, done, or used by night or every night," *id.* at 1527, and a nightly rental is therefore a rental "happening, done, or used by [the] night." *Id.*

¶ 4 In this case, a weekly rental is clearly similar to nightly rentals and timeshares, when considering those terms together. Although one might interpret "nightly" as only encompassing rentals up to six

nights, before the term "weekly" would become the appropriate term, the plain meaning of "timeshare" contemplates a use for a somewhat longer duration of time, namely a week or two. A weekly rental is of a relatively short duration and when compared to the two terms specifically used, a weekly rental is a similar use in that it has "characteristics in common" with and is "very much [ ]like" a nightly rental or a timeshare.[3] *Id.* at 2120.

¶ 5 Additionally, section 2 must be interpreted in light of section 16 of article X of the CC & Rs. *See Fairbourn Commercial, Inc.*, 2004 UT 54, ¶ 10, 94 P.3d 292 ("When interpreting a contract, a court is to consider each provision in relation to all of the others, with a view toward giving effect to all and ignoring none.") (citation and internal quotation marks omitted). That section is entitled "No Business Uses" and provides an exception to its prohibition on business uses in that "any owner or his duly authorized agent may rent or lease said owner's residential building from time to time." Of course, given the explicit prohibition in section 2 of short-term rentals, any such rental or lease would have to be of longer duration than that described in section 2. "[F]rom time to time" is defined as "once in a while" or "occasionally." *Webster's Third New Int'l Dictionary* at 2395. Brown's multiple weekly rentals appear to have violated the "from time to time" provision of section 16 as well as the short-term rental prohibition of section 2, and when section 2 and 16 are read together, the rentals clearly violated the intent of the CC & Rs as a whole.[4]

---

**2.** The legal definition of "timesharing" is "[j]oint ownership or rental of property (such as a vacation condominium) by several persons who take turns occupying the property." *Black's Law Dictionary* 1621 (9th ed. 2009). South Ridge Homeowners' Association, without citation, claims that timeshares are typically divided into one-week intervals, while Brown, citing the unpublished decision in *Aggressive Marketing Services, Inc. v. Crosswinds, Inc.*, No. 179981, 1996 WL 33349395, 1996 Mich.App. LEXIS 665 (Mich.Ct. App. Nov. 22, 1996) (per curiam), claims the sixth edition of *Black's Law Dictionary* provided an example of timesharing as occurring in two-week intervals, *see id.* 1996 WL 33349395 at *2 n. 2, 1996 Mich.App. LEXIS 665 at *5 n. 2.

Timeshares undoubtedly can be structured on a one-week or two-week basis, as well as for other short durations. *See generally Kimball Condo. Owners Ass'n v. County Bd. of Equalization*, 943 P.2d 642, 643–44 (Utah 1997) (noting that, in this particular agreement, "[p]urchasers [had] the right to use their units for one week per year"). The key is that timeshares are typically for short durations. *See* Merriam–Webster OnLine, http://www.merriam-webster.com/dictionary/timeshare (last visited Feb. 3, 2010).

**3.** The common thread among rentals of short duration, be it nightly, weekly, or even for two weeks, is that they are transient in nature—multiple people will be coming and going for short periods of time.

¶ 6 The breadth of the trial court's injunction is more troubling. But, given the trial court's broad discretion to enter injunctions, especially in the context of restrictive covenants, we also affirm the injunction against Brown. *See generally Carrier v. Lindquist,* 2001 UT 105, ¶ 26, 37 P.3d 1112 ("On appellate review, a grant of injunction is overturned only upon showing that the district court abused its discretion or that the decision is clearly against the weight of evidence."); *Fink v. Miller,* 896 P.2d 649, 655 n. 8 (Utah Ct.App.) ("[T]he element of harm . . . is not essential to the court's decision to grant a permanent injunction to enforce a restrictive covenant. Property owners have a protectable interest in enforcing restrictive covenants through injunctive relief without a showing of harm."), *cert. denied,* 910 P.2d 425 (Utah 1995). As to our concern about the scope of the injunction, we accept the assurance of the homeowners' association's counsel at oral argument that the clear intent of the injunction is to only require Brown's notification regarding the identity of visitors, and the duration of visits, when Brown herself is not present to host the visitors. We decline to disturb the terms of the injunction, given this gloss to be read into the injunction. Imposing some sort of rigorous check on Brown was well within the trial court's discretion under the facts of this case—especially in light of her posted "house rules" instructing her renters to remain discrete and to only inform neighbors that they were "guests" or "friends," suggesting a willingness on her part to take active measures to hide impermissible short-term rentals from her neighbors or the homeowners' association.

■ ¶ 7 Given that we have affirmed the trial court's determination that Brown violated the CC & Rs, we also affirm its award of attorney fees to the homeowners' association and grant its request for attorney fees on appeal. *See Management Servs. Corp. v. Development Assoc.,* 617 P.2d 406, 409 (Utah 1980) (holding that "a provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal as well as at trial"). We remand to the trial court to determine the amount of fees reasonably incurred by the homeowners' association on appeal.

¶ 8 Affirmed.

¶ 9 I CONCUR: JAMES Z. DAVIS, Presiding Judge.

THORNE, Judge (concurring in part and dissenting in part):

¶ 10 I concur with the majority's determination to the extent it finds that Brown's solicitations and multiple weekly rentals violated the CC & Rs prohibition of business rentals. I also agree that the trial court was justified in permanently enjoining Brown from renting the residence or otherwise making it available for transient lodging purposes. However, I respectfully dissent from the majority's affirmance of the injunction concerning the advance notice requirement. I believe that the advance notice requirement is overly broad. The injunction states,

> This Order and Judgment shall not be construed to prohibit use of the Residence by [Brown]'s family and friends provided [Brown] delivers one-week advance written notice to the president of [the] South Ridge Homeowners' Association listing the name of each family member and friend who will be using the Residence and the expected dates of use.

This requirement unnecessarily obligates Brown to take additional steps, not required of other homeowners, to exercise her right to allow her family and friends to use the residence. Such a requirement, without a demonstration of an actual violation of the injunction's prohibition against business use or other affirmative indication that Brown has

---

4. In briefing and in ruling on summary judgment, the parties and trial court, respectively, did not focus on how many rentals actually occurred. Brown claimed the rentals happened "occasionally" and "fewer than six" times a year. When considering sections 2 and 16 together, though, weekly rentals happening five times a year violate the intent of the CC & Rs to prohibit nightly rentals, timeshares, and other similar uses, i.e., other short-term rentals, and the CC & Rs' intent to only allow longer-term rentals from time to time, i.e., "once in a while."

refused to obey the injunction, is not appropriate.

¶ 11 Here, any acts in violation of the CC & Rs, as well as any acts to hide impermissible short-term rentals from neighbors, appear to have taken place *prior* to the injunction and does not justify imposition of anticipatory, indefinite, and restrictive advance notice requirements of family and friend visits. Further, I believe it inadvisable for this court to modify the trial court's injunction based on the homeowners' association's counsel's assertions at oral argument on appeal that the intent of the injunction is to only require Brown's notification regarding the identity of visitors and the duration of visits when Brown herself is not present to host the visitors. Accordingly, I would reverse the injunction and remand the matter to the trial court for the issuance of a more narrowly tailored injunction.